Peter R. Silverman, Esq.
Donald F. Schneider, Esq.
SILVERMAN SHIN & BYRNE PLLC
*Attorneys for Plaintiff Chun Peter Dong*
Wall Street Plaza
88 Pine Street, 22nd Floor
New York, New York 10005
Tel.: (212) 779-8600


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
CHUN PETER DONG,

                                                    Plaintiff,

           - against -
                                                                                    16-CV-5836 (NGG)(JO)

CHAIM MILLER a/k/a HARRY MILLER, SAM
SPREI a/k/a YECHIAL SHIMON SPREI, 3052 BRIGHTON
FIRST LLC, 3052 BRIGHTON FIRST LOFT, LLC, 3052
BRIGHTON MB LLC, 3112 EMMONS LOFTS LLC, 203-
205 NORTH 8TH STREET LOFT LLC, 203-205 N8 MB
LLC, 271 SEA BREEZE AVENUE LLC, 261 LOFTS
MANAGER LLC, BESAD 5TH LLC, 97 GRAND
AVENUE MEMBER LLC, 97 GRAND MB LLC, 11-45
RYERSON HOLDINGS, LLC, 11-45 RYERSON MB, LLC,
OLDEN EQUITIES LLC and JOHN DOE Nos. 1-10, being
individuals and entities who hold property belonging to
Defendants Chaim Miller and Sam Sprei, whose identities
are presently unknown to Plaintiffs,

                                                    Defendants.
-------------------------------------------------------------------------x


# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

452089-4

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

POINT I ..........................................................................................................................................1

THERE IS COMPLETE DIVERSITY OF CITIZENSHIP
BETWEEN PLAINTIFF AND ALL DEFENDANTS.................................................................1

POINT II .........................................................................................................................................3

A PRELIMINARY INJUNCTION ENJOINING MILLER AND SPREI FROM
SELLING, TRANSFERRING, ASSIGNING, SECRETING OR ENCUMBERING
THEIR LIMITED LIABILITY COMPANY MEMBERSHIP INTERESTS AND
LIMITED LIABILITY COMPANY PROPERTY IS WARRANTED AND
NECESSARY ..................................................................................................................................3

A.      A Preliminary Injunction is Appropriate to Prevent Defendants
From Taking Action to Frustrate a Judgment...................................................................4

B.      Grupo ................................................................................................................................6

       1.      Fraudulent Conveyance Claims (Seventh through Eleventh Causes of
Action) .................................................................................................................7

       2.      Equitable Lien Claims (Thirteenth and Fifteenth Causes of Action) ....................11

       3.      Permanent Injunction...........................................................................................13

CONCLUSION...............................................................................................................................14

452089-4

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adelphia Communications Corp. v. Rigas,* No. 02 Civ. 8495,
  2003 WL 21297258 (S.D.N.Y. June 4, 2003) ...................................................7, 13

*Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed. Appx. 707 (5th Cir. 2007).........................6

*Bevilaqua v. Bernstein,* 642 F. Supp. 1072 (S.D.N.Y. 1986) ...............................................2

*Capital Distributions Services, Ltd. v. Ducor Exp. Airlines, Inc.,*
  440 F. Supp. 2d 195 (E.D.N.Y. 2006) .................................................................4, 5, 7

*Chappelle v. Beacon Communications Corp.,* 863 F. Supp. 179 (S.D.N.Y. 1994).....................1, 2

*Chemical Bank v. Haseotes,* 13 F.3d 569 (2d Cir. 1994) .....................................................4

*Clyde by Clyde v. Ludwig Hardware Store, Inc.,* 815 F. Supp. 688 (S.D.N.Y. 1993) ...................1

*CSC Holdings, Inc. v. Greenleaf Electronics, Inc.,* No. 99 C 7249,
  2000 WL 715601 (N.D. Ill. 2000) ........................................................................7

*Daye Nonferrous Metals Co.,* No. 96 Civ. 9740, 1997 WL 375680 (S.D.N.Y. July 7, 1997) ........6

*Deckert v. Independence Shares Corp.,* 311 U.S. 282 (1940).................................................11

*Gelfand v. Stone,* 727 F. Supp. 98 (S.D.N.Y. 1989)..........................................................6, 10

*Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.,*
  527 U.S. 308 (1999)....................................................................................6, 8, 10

*Iantosca v. Step Plan Services, Inc.,* 604 F.3d 24 (1st Cir. 2010) .....................................7, 13

*In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir. 1985).......................................................4

*In re Focus Media,* 387 F.3d 1077 (9th Cir. 2004)..............................................................8

*Leverage Leasing Admin. Corp. v. PacifiCorp. Capital Inc.,*
  87 F.3d 44 (2d Cir. 1996) ...............................................................................1

452089-4

ii

*Linardos v. Fortuna*, 157 F.3d 945 (2d Cir. 1998) ...........................................................2

*Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239 (S.D.N.Y. 2002)............................12

*New Millennium Capital Partners, III, LLC v. Juniper Group Inc.*,
    No. 10 Civ. 46, 2010 WL 1257325 (S.D.N.Y. Mar. 26, 2010) ...................................2

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000) ......................................1, 2

*Pashaian v. Eccleston Properties, Ltd.*, 88 F.3d 77 (2d Cir. 1996)............................4, 5, 8

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of VA, LLC*,
    144 F. Supp. 2d 241 (S.D.N.Y. 2014) .......................................................................11

*Republic of the Philippines*, 806 F.2d 344 (2d Cir. 1986)................................................4

*U.S. ex rel. Rahman v. Oncology Assocs*, 198 F.3d 489 (4th Cir. 1999)....................6, 13

*Williamson v. Osenton*, 232 U.S. 619 (1914) ...................................................................1

*Williamson v. Recovery Ltd. Partnership*, 731 F.3d 608 (6th Cir. 2013)........................8

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    No. 00 Civ. 8051, 2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) ....................6, 11, 13

## Statutes

CPLR § 8303(b).................................................................................................................1

*N.Y. Debtor and Creditor Law § 270, et seq.* .................................................................7

*Fed. R. Civ. P.* 65(a) .......................................................................................................3

452089-4

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted by Plaintiff Chun Peter Dong ("Dong") in response to Defendants' Memorandum of Law in opposition to his motion for an order granting a preliminary injunction.

Dong withdraws without prejudice that portion of his motion which seeks appointment of a post-judgment receiver and for a discretionary allowance under CPLR § 8303(b).

## POINT I

### THERE IS COMPLETE DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFF AND ALL DEFENDANTS

Defendants argue that there is not complete diversity of citizenship between Dong and the Defendants because, they assert, Dong is a domiciliary of the State of New York and not of Georgia as alleged in his pleading (Def. Mem. at p. 4). Such assertion is baseless.

Citizenship of a natural person for diversity purposes is synonymous with his or her "domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("*Palazzo*") ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile."). Even though a party may have several places of residence, he or she has only one domicile at a given time. *Williamson v. Osenton*, 232 U.S. 619, 625 (1914); *Chappelle v. Beacon Communications Corp.*, 863 F. Supp. 179 (S.D.N.Y. 1994) ("*Chappelle*"). An allegation of "residence" is *not* tantamount to an allegation of citizenship or domicile. *Leverage Leasing Admin. Corp. v. PacifiCorp. Capital Inc.*, 87 F.3d 44, 47 (2d Cir. 1996); *Clyde by Clyde v. Ludwig Hardware Store, Inc.*, 815 F. Supp. 688, 690 (S.D.N.Y. 1993). Generally, a domicile is distinguished from a residence by the permanency and scope of the party's presence there.

452089-4

*Chappelle,* 863 F. Supp. at 181.   The domicile of an individual is "where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998); *Palazzo,* 232 F.3d at 42.

Where, unlike here, a party maintains more than one residence, the courts generally focus on where the party intends to make his domicile and look to a variety of objective indicia of intent, including where one resides, pays taxes, works, is registered to vote, and is licensed to drive.   *Bevilaqua v. Bernstein,* 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986) (concluding that resident of New York had not proven that he had changed his domicile to Virginia by moving to Virginia to live with his parents and obtain medical care, where he did not take a job in Virginia, pay taxes there, register to vote there, attend classes there, or obtain a Virginia driver's license); *see also, New Millennium Capital Partners, III, LLC v. Juniper Group Inc.,* No. 10 Civ. 46, 2010 WL 1257325 *2 (S.D.N.Y. Mar. 26, 2010) (fact that member of partnership owned New York property and held a New York driver's license on the date the action was commenced did not undermine fact that she lived and worked in Florida with the intention of permanently moving to Florida).

In this case, Dong has been domiciled in Georgia for more than 12 years, where he has resided with his common law wife, raised his children and continues to live with his youngest child who attends high school there (Dong Further Decl. ¶¶ 2-3 and Ex. A thereto).   Dong has been employed in Atlanta, Georgia as the General Manager of a wholesale food distributor for the last six years.   (*Id.* at 4 and Ex. B thereto)   The company is located a short drive from his home.   (*Id.*)   Dong pays taxes in the State of Georgia, has a Georgia driver's license, and registered his three automobiles in Georgia.   (*Id.* at ¶¶ 6-8 and Exs. D, E, F thereto)

452089-4

2

Dong engages in business transactions in the State of New York involving real estate, and travels from Atlanta to New York frequently in connection with such business interests. When in New York, he stays in an apartment owned by his aunt at 37-20 Prince Street, Flushing, New York. He does not own the apartment, neither his wife nor children have ever resided at the apartment, and he uses the apartment only sporadically when he is in New York for business. It has been his practice when entering into various agreements in New York to use that address. It is not and has never been his residence. (*Id.* at ¶ 9 and Ex. G thereto) A second New York address, 46-11 192nd Street, Flushing, New York, which is referenced in exhibits submitted by Defendants, is a two family home that Dong purchased in May 2016. Both sections of the two family home have been rented to tenants unrelated to him. He has never used that property as a residence. (*Id.* at ¶ 10).

In view of the foregoing, Dong is a domiciliary of the State of Georgia.

## POINT II

### A PRELIMINARY INJUNCTION ENJOINING MILLER AND SPREI FROM SELLING, TRANSFERRING, ASSIGNING, SECRETING OR ENCUMBERING THEIR LIMITED LIABILITY COMPANY MEMBERSHIP INTERESTS AND LIMITED LIABILITY COMPANY PROPERTY IS WARRANTED AND NECESSARY

We demonstrated in our opening Memorandum of Law that Dong has satisfied the requirements for a preliminary injunction. Pl. Mem. at Point I, pp. 1-8.

Defendants argue in response that a preliminary injunction is not available under *Fed. R. Civ. P.* 65(a) to prevent a defendant from frustrating a potential money judgment. Def. Mem. at p. 12. We demonstrate below that Defendants' contention lacks merit.

452089-4

## A. A Preliminary Injunction is Appropriate to Prevent Defendants From Taking Action to Frustrate a Judgment

Notwithstanding the general rule that injunctive relief is not available to a party claiming loss that can be adequately remedied by monetary damages, a preliminary injunction is appropriate to prevent a defendant from taking action to frustrate a judgment. *Capital Distributions Services, Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F. Supp. 2d 195, 210 (E.D.N.Y. 2006) ("*Capital Distributions*"); *see Pashaian v. Eccleston Properties, Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996) ("*Pashaian*") ("A preliminary injunction may issue to preserve assets as security for a potential money judgment where evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible."); *Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994) ("[A]n injunction may issue to stop a defendant from dissipating assets in an effort to frustrate a judgment."); *Republic of the Philippines*, 806 F.2d 344, 356 (2d Cir. 1986) ("[P]reliminary injunctions are proper to prevent a defendant from making a judgment uncollectible."); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("We find no abuse of the district court's discretion in its conclusion that this is an appropriate case for the issuance of injunctive relief to prevent [defendant] from making uncollectible any judgment the [plaintiff] may eventually obtain against her.").

The evidence in the record overwhelmingly supports a finding that Miller and Sprei have taken steps to dissipate and conceal their assets and those of the business entities which they control, and that unless the Court issues at the preliminary injunction, they will continue to do so. The obdurate refusals of Miller and his wife to comply with post-Judgment Subpoenas for documents and testimony (Achiron Decl. ¶¶ 6, 15-17, 19-20, 23) amply evidence that they are secreting their assets. Similar conduct in *Capital Distributions* was held to warrant a preliminary

452089-4

4

injunction.  440 F. Supp. 2d at 210.  In granting a preliminary injunction enjoining the defendant from transferring, encumbering or otherwise reducing his interest in certain real property in *Capital Distributions*, the District Court concluded that defendant's "eva[sion] [of] questions about his assets," "refus[al] to answer questions" about other assets, and eventual "walk[ing] out of the deposition" amply supported "a finding that [defendant] has taken steps to dissipate and conceal his assets and, unless the court issues an injunction, will continue to do so…" *Id.*  So too here.

Moreover, judicial findings of fraudulent transfers and other unlawful conduct by Miller and Sprei concerning their assets during the last few years further demonstrate the need for injunctive relief.  (Dong Initial Decl. ¶¶ 6-11.)  They include (a) a state court judge's "intentional fraudulent conveyances" of Sprei's membership interests in certain limited liability companies, while he was a judgment-debtor, (*id.* at ¶ 8(a); (b) a massive scheme incorporating fraudulent conveyance which a federal district judge found that Miller originated the idea for (*id.* at ¶ 8(b)); (c) the unlawful transfer of a $14.33 million down payment by Miller and Sprei, owned by one limited liability company (45 John Lofts LLC) of which Dong is a member, to pay off their personal obligations with respect to four other limited liability companies (*id.* at ¶¶ (8(c), 13-37); and (d) Miller and Sprei's use of mortgage proceeds received by one limited liability company of which Dong was then a member (Sullivan 90), for purposes unrelated to that entity (*id.* at ¶¶ 38-48).  Such misconduct has resulted in at least five injunctions against Miller and Sprei during 2015 alone, (*id.* at ¶ 9), and an attachment of their assets. *Perkins Coie LLP v. Sam Sprei, et al.*, Index No. 654712/2016 (Ex. R to Achiron Decl.).

Significantly, courts within the Second Circuit have considered evidence of past fraudulent activity in determining similar motions for injunctive relief.  *See Pashaian*, 88 F.3d at

452089-4

5

87 (implying that " an inferred intention" to frustrate a judgment can give rise to a likelihood); *Gelfand v. Stone,* 727 F. Supp. 98, 100-101 (S.D.N.Y. 1989) (holding that "substantial evidence of [defendant's] past fraudulent activities…indicate[d] clearly that [defendant's] fraudulent practices [would] likely…continue."); *Daye Nonferrous Metals Co.*, No. 96 Civ. 9740, 1997 WL 375680 at *6 (S.D.N.Y. July 7, 1997).

**B.     Grupo**

In *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ("*Grupo*"), the U.S. Supreme Court held that a federal district court was without authority to issue preliminary injunctive relief in a case involving an unsecured general creditor's legal claim for money damages.  In so holding, the Supreme Court determined that a federal district court's equitable powers, as granted by the Judiciary Act of 1789, are limited to those powers traditionally accorded by courts of equity. *Id.,* 527 U.S. at 308-309, 318-323.

Federal courts have interpreted *Grupo*'s proscription against issuance of preliminary injunctive relief narrowly.  *See, generally, U.S. ex rel. Rahman v. Oncology Assocs,* 198 F.3d 489 (4th Cir. 1999) ("*Rahman*") ("[*Grupo's*] holding is carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions solely at law…."); *Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed. Appx. 707, 709 (5th Cir. 2007) (citing cases and agreeing that *Grupo* is limited to actions solely at law).  Accordingly, federal courts have held that *Grupo* does not bar a federal court from issuing preliminary injunctive relief in cases involving mixed legal and equitable claims. *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.,* No. 00 Civ. 8051, 2000 WL 1610790 at *1 (S.D.N.Y. Oct. 27, 2000) ("*Wishnatzki*") ("Indeed, courts since [*Grupo*] have found that where plaintiffs seeks both equitable and legal relief in relation to specific funds, a

452089-4

6

court retains its equitable power to freeze assets."); *Rahman*, 198 F.3d at 498-99 (holding that mixed legal and equitable claims do not defeat the district court's equitable powers and concluding that "the district court was authorized by its traditional equitable power to issue a preliminary injunction in this action freezing the assets of the defendants"); *CSC Holdings, Inc. v. Greenleaf Electronics, Inc.*, No. 99 C 7249, 2000 WL 715601 at *8 (N.D. Ill. 2000) ("*CSC*") (notwithstanding *Grupo*, "a court still has the equitable power to freeze a party's assets where injunctive relief is sought" and such power "includes cases where a combination of monetary and equitable relief is sought"); *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24, 33-34 (1st Cir. 2010) ("*Iantosca*") ("If it were necessary to rule on the point, we would likely agree with decisions concluding that a court may, consistent with [*Grupo*], issue asset freezing injunctions in mixed cases ... where both equitable and legal remedies are sought.") (quotations omitted); *Adelphia Communications Corp. v. Rigas*, No. 02 Civ. 8495, 2003 WL 21297258 at *4-5 (S.D.N.Y. June 4, 2003) ("*Adelphia*") (finding that even if *Grupo* were applicable, it would still not preclude issuance of a preliminary injunction asset-freeze where a movant asserts both legal and equitable claims).

## 1. Fraudulent Conveyance Claims (Seventh Through Eleventh Causes of Action)

*Grupo* does not bar preliminary injunctive relief in cases involving fraudulent conveyance claims such as the Seventh through Eleventh Causes of Action in the Amended and Supplemental Complaint. As discussed below, district courts have granted preliminary injunctions in cases asserting, among other things, fraudulent conveyance claims under the *N.Y. Debtor and Creditor Law § 270, et seq.*

In *Capital Distributions*, the District Court granted a preliminary injunction enjoining a defendant from transferring, disposing of, encumbering, or otherwise reducing or jeopardizing

452089-4

7

his interest in several properties purchased after his receipt from the defendant-debtor of allegedly fraudulently conveyed funds.  Plaintiff sought to recover funds paid to defendant for the provision of flights that defendant failed to provide.  Among its claims, plaintiff alleged that defendant-debtor had fraudulently transferred funds to certain other defendants.  The District Court held that although the fraudulent conveyance claim was "essentially a claim for money damages," and the general rule precluded a party from obtaining injunctive relief for such a loss, a preliminary injunction was appropriate to prevent a defendant from taking actions to frustrate a judgment, and enjoined the defendant-transferee with respect to the three properties that were the subject of the fraudulent conveyance claims.  *Id.* at 210.

Similarly, in *Pashaian v. Eccleston Properties, Ltd.*, 88 F.3d 77 (1996), in a case alleging fraudulent conveyance, the Second Circuit affirmed the issuance of a preliminary injunction enjoining the disposition or secretion of assets that had been transferred by the judgment debtors, by finding an intent to frustrate a judgment on the merits.

In *Grupo*, the Supreme Court stated that the law of fraudulent conveyance and bankruptcy was available and, in fact specifically developed to, among other things, prevent a debtor from trying to dissipate its assets and avoid paying its debts. *Grupo,* 527 U.S. at 322.  The above cases are consistent with *Grupo*, which one court has held "specifically excepted … instances of fraudulent conveyance and bankruptcy." *In re Focus Media,* 387 F.3d 1077, 1084 (9th Cir. 2004)*, citing Grupo,* 527 U.S. at 322 ("The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not."); s*ee Williamson v. Recovery Ltd. Partnership,* 731 F.3d 608, 628 (6th Cir. 2013) ("It is sufficient to note, however, that the majority in [*Grupo*] specifically reserved the question of whether an injunction to protect a legal

452089-4

8

remedy would be appropriate in cases where the defendants have engaged in fraudulent behavior, 527 U.S. at 325 n. 7, 119 S.Ct. 1961, and a number of our sister circuits have interpreted [*Grupo*] to exempt[ ] from its proscription against preliminary injunctions freezing assets cases involving ... fraudulent conveyances …. We agree and join our sister circuits.") (quotations and internal citations omitted).  Thus, federal cases involving fraudulent conveyance claims fall outside of *Grupo*'s prohibition on a federal court's authority to issue preliminary injunctive relief in cases asserting legal claims for money damages.

As alleged above, Miller and Sprei engaged in various schemes to defraud their investors and creditors, including numerous fraudulent conveyances.  Such conduct included (a) "intentional fraudulent conveyances" of Sprei's membership interests in certain limited liability companies, as found by a state court judge (Dong Initial Decl. ¶ 8(a)); (b) a massive scheme incorporating fraudulent conveyance which a federal district judge found that Miller originated the idea for (*id.* at ¶ 8(b)); (c) the unlawful transfer of a $14.33 million down payment by Miller and Sprei, which belonged to a limited liability company (45 John Lofts LLC) of which Dong is a member, to pay off their personal obligations with respect to four other limited liability companies (*id.* at ¶¶ 8(c), 13-37); and (d) their use of mortgage proceeds received by one limited liability company of which Dong was then a member (Sullivan 90), for purposes unrelated to that entity (*id.* at ¶¶ 38-48).  Such misconduct resulted in at least five injunctions against Miller and Sprei during 2015 alone, *id.* at ¶ 9, and an attachment of their assets. Ex. R to Achiron Decl.

Most recently, Miller, the managing member of 97 Grand Avenue LLC, was accused by the U.S. Trustee of having improperly diverted $374,968 from 97 Grand Avenue LLC, a debtor in possession in Chapter 11 bankruptcy proceedings. (Ex. Q to Achiron Decl.)  The U.S. Trustee has filed a motion based on such misconduct to convert the Chapter 11 bankruptcy of 97 Grand

452089-4

9

Avenue LLC to one under Chapter 7 of the Bankruptcy Code. (*Id.*)  Dong is a creditor of the Debtor therein and, once again, has been damaged by Miller's dissipation of assets of one of the limited liability companies of which he is the managing member.

Prior to Miller and Sprei's latest fraud with respect to 97 Grand Avenue LLC, *infra*, they engaged in another fraud regarding the 97 Grand Avenue LLC. See Amended and Supplemental Complaint ¶¶ 150-156; Dong Further Decl. ¶¶ 13-22.

It is believed that such transfers were made without fair consideration at a time when (i) the Defendant making such transfer was insolvent or rendered insolvent thereby, (ii) the February 3, 2016 judgment against Miller and Sprei for $806,142.00 had already been docketed, (iii) the Defendant making such transfer was engaged in, or about to engage in, a business or transaction for which the property remaining in his or her hands after the transfer was an unreasonably small capital, and/or (iv) the Defendant making such transfer intended and/or believed that he or it would incur debts beyond his or its ability to pay as they matured.

The aforesaid fraudulent transfers by Miller and Sprei are merely the tip of the iceberg. They have engaged in a pattern and practice of utilizing their business entities as personal piggy banks, without regard to corporate form or formality, transferring funds and other assets in and out of each entity as they see fit for their personal purposes. Dong Further Decl. ¶ 12.  All of the foregoing past fraudulent activities of Miller and Sprei indicate that such practices have continued and are likely to continue further absent the issuance of injunctive relief. *Gelfand v. Stone,* 727 F. Supp. 98, 100-101 (S.D.N.Y. 1989) (holding that "substantial evidence of [defendant's] past fraudulent activities...indicate[d] clearly that [defendant's] fraudulent practices [would] likely...continue.")

452089-4

10

**2.      Equitable Lien Claims (Thirteenth and Fifteenth Causes of Action)**

Similarly, *Grupo* does not bar preliminary injunctive relief where a creditor demonstrates

an equitable lien over the property as to which defendant has requested to be enjoined, such as in

the Thirteenth and Fifteenth Causes of Action of the Amended and Supplemental Complaint.

*Grupo* does not preclude a federal court from issuing a preliminary injunction with respect to

equitable lien claims with respect to specific property.   *Quantum Corporate Funding, Ltd. v.*

*Assist You Home Health Care Services of VA, LLC,* 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y.

2014) ("*Quantum*") ("[C]ourts since [*Grupo*] have found that where plaintiffs seek both

equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze

assets.").   In reconciling prior Supreme Court decisions, the *Grupo* Court reaffirmed its decision

in *Deckert v. Independence Shares Corp.,* 311 U.S. 282 (1940) ("*Deckert*"), and distinguished

*Deckert* from *Grupo*, because in *Deckert* preliminary injunctive relief was permissible when a

creditor asserted an equitable lien over the property sought to be the subject of an injunction.

In *Quantum*, the district court issued preliminary injunctive relief to prevent corporate

debtors from disposing of assets in which plaintiff-creditor possessed a security interest. *Id.,* 144

F. Supp. 2d at 249-50.   The court distinguished *Grupo* in that the plaintiffs in *Grupo* had no

equitable interest in the property as to which they sought injunctive relief, whereas the *Quantum*

plaintiff possessed a security interest in the debtors' assets.

Similarly, in *Wishnatzki*, 2000 WL 1610790 at *1, the district court granted a temporary

restraining order enjoining defendants from dissipating funds owed to plaintiff and reaffirmed a

court's power to grant preliminary injunctive relief where a plaintiff asserted an equitable

interest in the funds sought to be restrained.   The court determined that plaintiff's application for

a preliminary injunction was proper because such relief was "outside the purview of [*Grupo*], not

452089-4

11

only because of [p]laintiff's equitable interest in the trust proceeds, but because courts have traditionally had the power to enjoin defendants from dissipating funds that are the subject of the underlying suit." *Id.* at \*2. *See also, Motorola Credit Corp. v. Uzan,* 202 F. Supp. 2d 239, 250 (S.D.N.Y. 2002) (finding *Grupo* inapplicable where plaintiff sought equitable remedies in aid of preserving an asset in which such plaintiff had an equitable interest). See Amended and Supplemental Complaint, Thirteenth and Fifteenth Causes of Action; Dong Further Decl. ¶¶ 12-40.

Plaintiff has an equitable interest in Miller and Sprei's member interest in 97 Grand Avenue LLC ("97 Grand"). Miller, Sprei and Plaintiff entered into an agreement ("Agreement") pursuant to which Miller and Sprei acknowledged a portion of their $1,000,000 indebtedness to Plaintiff (the "Indebtedness") in connection with a loan by Plaintiff to them. Miller and Sprei agreed to repay the Indebtedness no later than the time of closing, sale or refinancing of the property belonging to 97 Grand (the "Property") and further agreed (i) to pledge as collateral to Plaintiff ten percent of their member interests in 97 Grand, and (ii) not to "transfer, sell, convey, pledge, mortgage or sign a contract to sell or assign" such member interests absent Plaintiff's approval or consent. Miller and Sprei failed to repay the Indebtedness to Plaintiff, have refused to sign pledge documents to effectuate the Agreement, and on June 17, 2015 conveyed a 48% interest in the Property, resulting in a preliminary injunction being issued against them to enjoin them from pledging, disposing, encumbering or selling the Property or their interest in the Property.[1] Dong Further Decl. ¶¶ 13-22.

Additionally, Plaintiff also has an equitable interest on funds paid to Defendant 261 Lofts Manager LLC ("Lofts Manager") and on Miller's member interest therein. On or about

---

[1] Such preliminary injunction is no longer extant.
452089-4

December 28, 2014, Plaintiff entered into an agreement with Miller, on behalf of Lofts Manager, in which Miller owns a 100% member interest, to acquire a 30% member interest in a limited liability company (261 East 78 Lofts LLC) from Lofts Manager's 62.5% member interest therein, for a purchase price of $1,000,000. Unbeknownst to Plaintiff at the time, Miller did not have authority to sell or assign a member interest in 261 East 78 Lofts LLC absent the consent of another member (Lee Moncho). It is believed that Lee Moncho did not consent to the sale. Miller never fulfilled his obligation to Plaintiff pursuant to such agreement and never returned the $1,000,000 to Plaintiff. Instead, Miller subsequently assigned the entirety of his member interest in Lofts Manager to Lee Moncho. Dong Further Decl. ¶¶ 23-40.

### 3.    Permanent Injunction

The First Cause of Action seeks a preliminary injunction tantamount to an asset freeze in certain circumstances. Such an asset freeze is warranted under the circumstances of this case. *See Wishnatzki,* 2000 WL 1610790 at *1-2 (granting preliminary injunction freezing assets because notwithstanding *Grupo,* a court may still "retain[] its equitable power to freeze assets"); *Rahman,* 198 F.3d at 499 (affirming grant of a preliminary injunction freezing assets after holding that "the district court was authorized by its traditional equitable power to issue a preliminary injunction … freezing the assets of the defendants"); *CSC,* 2000 WL 715601 at *6-8 (granting preliminary injunction freezing assets after determining that "a court still has the equitable power to freeze a party's assets…."); *Iantosca,* 604 F.3d at 33-34 ("If it were necessary to rule on the point, we would likely agree with decisions concluding that a court may, consistent with [*Grupo*], issue asset freezing injunctions…." ); *Adelphia,* 2003 WL 21297258 at * 4-5 (reasoning that *Grupo* does not always preclude issuance of a preliminary injunction asset-freeze).

452089-4

13

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted in all respects.


Dated: New York, New York
       December 7, 2016


SILVERMAN SHIN & BYRNE PLLC

By: _____
       Peter R. Silverman
       Donald F. Schneider
       *Attorneys for Plaintiff*
       Wall Street Plaza
       88 Pine Street, 22nd Floor
       New York, New York 10005
       (212) 779-8600


452089-4

14