D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CHUN PETER DONG,

                    Plaintiff,

      -against-

CHAIM MILLER et al.,

                    Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**16-CV-5836 (NGG) (JO)**

       Plaintiff Chun Peter Dong alleges that, after he invested millions of dollars in real-estate ventures managed by Defendants Chaim Miller and Sam Sprei,[1] Defendants engaged in extensive fraud and misdealing with respect to those ventures. (See Am. Compl. (Dkt. 29) ¶¶ 23-65.) Plaintiff seeks a preliminary injunction barring Defendants from "selling, transferring, assigning, modifying, secreting[,] or encumbering" their assets, including any real or personal property that they own or control and any business membership or ownership interests that they hold. (Unsigned Order to Show Cause and Mot. for TRO ("TRO Mot.") (Dkt. 5); Mem. in Supp. of Mot. for Prelim. Inj. ("Pl. Mem.") (Dkt. 5-27).) The court referred Plaintiff's motion to Magistrate Judge James Orenstein, who prepared a report and recommendation (the "R&R") advising that the court should grant Plaintiff's motion and issue the requested preliminary injunction. (R&R (Dkt. 47).) Defendants timely objected to the R&R.

---

[1] Plaintiff also names as defendants a number of limited-liability companies that Defendants allegedly own or manage (Am. Compl. (Dkt. 29) ¶¶ 6-19), as well as ten John Does who are alleged "to be in possession of property belonging to [Defendants]" (id. ¶ 20). For ease of reference, the court refers to Miller and Sprei together as "Defendants."

(Defs. Obj. to R&R ("Defs. Obj.") (Dkt. 50); Pl. Mem. in Opp'n to Defs. Obj. to R&R ("Pl. Opp'n") (Dkt. 52).)

Plaintiff's motion is GRANTED IN PART and DENIED IN PART, and the R&R is adopted in part and modified to the extent it is inconsistent with this Memorandum and Order. As the court explains in further detail below, it may not issue a preliminary injunction freezing Defendants' assets simply to ensure that Defendants will be able to satisfy a judgment in favor of Plaintiff on his contract claims. See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) ("Grupo Mexicano"). Accordingly, to the extent that Plaintiff seeks such an injunction, his request is overbroad. Similarly, because Plaintiff only seeks money damages in connection with his fraudulent-conveyance claims—not, for example, to void the allegedly fraudulent conveyances—those claims are properly classed as legal, not equitable, and the court may not issue a preliminary injunction to preserve assets to satisfy a judgment in Plaintiff's favor on those claims.

The court may, however, issue such an injunction with respect to assets that have a sufficient nexus to Plaintiff's equitable claims. In particular, the court finds that Plaintiff has demonstrated that he is entitled to a preliminary injunction freezing a ten-percent ownership interest held by Defendants in 97 Grand Avenue LLC ("97 Grand"). Pending a decision on the merits, the court therefore ENJOINS Defendants from transferring, pledging, encumbering, or taking any other action to impair the value of, this interest.

Plaintiff has not, however, demonstrated a likelihood of success on the merits of his first equitable-lien claim, to the extent he seeks an equitable lien over Defendants' membership interests in Sy Grand Steuben LLC ("Sy Grand"), or on the merits of his second equitable-lien claim. The court therefore will not issue an asset-freezing preliminary injunction with respect to

2

Defendants' interests in Sy Grand, or in the assets that are the subject of Plaintiff's second equitable-lien claim.

## I.  BACKGROUND

The R&R clearly and concisely sets forth the background of this case (R&R at 1-5), and Defendants have not objected to the Magistrate Judge's statement of facts. The court therefore adopts the R&R in this respect and offers the following statement of facts to guide the analysis below.

### A.  Factual Background

Defendants "are business associates who own interests in approximately seventeen different properties in New York." (R&R at 1.) After meeting them in 2013, Plaintiff invested in several limited-liability companies that they sponsored to develop or manage real properties in New York. (Id.; Am. Compl. ¶¶ 23-24.)

#### 1.  45 John Lofts LLC

In early 2014, Plaintiff invested $6 million in 45 John Lofts LLC ("John Lofts"), a limited-liability company the sole asset of which was a condominium building at 45-49 John Street in Manhattan (the "45 John Property"). (R&R at 2; Am. Compl. ¶ 40.) Additionally, Plaintiff personally guaranteed $49.5 million in mortgage financing for the 45 John Property. (R&R at 2.) In exchange, he received a 32-percent membership interest in John Lofts, and Miller amended the John Lofts operating agreement to provide that Plaintiff and Miller would remain John Lofts' sole members. (Id.) Nevertheless, without informing Plaintiff, Miller allegedly transferred 41 percent of his 68-percent interest in John Lofts to other investors. (Id.)

Shortly thereafter, Defendants began to face "substantial pressure" to raise money to buy out the interests of Miller's business partner, Bo Jin Zhu, in four limited-liability companies that

3

owned real property in Brooklyn. (Id.) Defendants agreed to purchase these interests from Zhu (via Renatus Portfolio Company, a holding company he owned) for $31 million, and they paid an $8.5 million deposit toward this purchase price. (Id.; see also Am. Compl. ¶ 37.) As the closing date for this buyout approached, Defendants found themselves nearly $20 million short of the acquisition price. (R&R at 2.) Cash-strapped, they unilaterally entered into a contract to sell the 45 John Property to a third party, HS45 John LLC ("HS45"), which paid a $14.3 million down payment for the property. (Id.; see also Am. Compl. ¶¶ 39-40; Pl. Decl. (Dkt. 5-3) ¶¶ 23-24.) Defendants diverted nearly $10 million of this down payment to themselves, using the proceeds to help finance their buy-out of Zhu's interests in the four companies. (R&R at 2; see also Am. Compl. ¶¶ 41-43; Pl. Decl. ¶¶ 25-26.) Plaintiff only learned that John Lofts had sold its sole asset when HS45 filed a Memorandum of the Contract of Sale in the city register's office. (R&R at 2; Am. Compl. ¶¶ 45-48; Pl. Decl. ¶¶ 27-32.) At that point, Plaintiff promptly brought suit in state court to enjoin the sale and the disbursement of the down payment. (R&R at 2; Am. Compl. ¶¶ 45-48; Pl. Decl. ¶¶ 27-32.)

HS45 then filed for bankruptcy, and Plaintiff's case was removed to the U.S. Bankruptcy Court for the Southern District of New York. See In re HS 45 John LLC, No. 15-10368 (SHL) (Bankr. S.D.N.Y.). The parties settled that action by, among other things, agreeing that the 45 John Property would be sold at auction and that Defendants would pay Plaintiff a stipulated sum on or before the date of the sale, as evidenced by a promissory note and a confession of judgment in the amount of $800,000. (R&R at 2-3; Am. Compl. ¶¶ 50-51; Pl. Decl. ¶¶ 33-34.) Although the 45 John Property was sold at auction, Defendants have yet to pay Plaintiff, and a judgment of $806,142.80 was subsequently entered in Plaintiff's favor in state court. (R&R at 3; Am. Compl. ¶¶ 52-54; Pl. Decl. ¶¶ 35-37; J. of Confession (Dkt. 5-21) at ECF p.2.)

4

### 2. Sullivan 90 Holdings LLC

In May 2014, Plaintiff also purchased a 50-percent membership interest in Sullivan 90 Holdings LLC ("Sullivan 90"), a limited-liability company managed by Miller that owns real property at 90-94 Sullivan Place in Brooklyn (the "Sullivan 90 Property"). (R&R at 3.) Plaintiff paid $2.1 million for this ownership interest. (Id.) As part of that transaction, Plaintiff and Miller amended Sullivan 90's operating agreement to provide that any sale or encumbrance of the Sullivan 90 Property would require both Miller's and Plaintiff's approval. (Id.) Nevertheless, without obtaining Plaintiff's consent, and by representing that he was the sole member of Sullivan 90, Miller borrowed $3.75 million via mortgage loan secured by the Sullivan 90 Property. (Id.) Miller refused to provide Plaintiff with business records for Sullivan 90 or account for the $3.75 million in loan proceeds. (Am. Compl. ¶¶ 61-64.) Plaintiff also filed suit in connection with this transaction, and the parties agreed to settle the suit on the condition that Sprei give Plaintiff a $1 million promissory note. (Id. ¶ 65.) Predictably, Sprei has defaulted on that note. (Id.)

### 3. 97 Grand Avenue LLC

On February 4, 2015, Defendants acknowledged that they owed Plaintiff $1 million in connection with a loan (the "Emmons Loan") he made to them relating to real property at 3112 Emmons Avenue in Brooklyn (the "Emmons Lofts"). (R&R at 3.) Defendants agreed (1) to repay this loan before selling or refinancing real property located at 97 Grand Avenue and owned by 97 Grand (the "97 Grand Property"); (2) to pledge ten percent of their membership interest in 97 Grand as security for the loan; and (3) not to "transfer, sell, convey, pledge, mortgage or sign a contract to sell or assign" their interests in 97 Grand without Plaintiff's approval. (Id. at 3-4.) Defendants failed to repay this loan as well. (Id.) Additionally, on June 17, 2015, another

alleged member of 97 Grand, Moshe Oratz, allegedly conveyed a 48-percent interest in the 97

Grand Property to Sy Grand, another limited-liability company of which Defendants are

managers or members, for no consideration. (R&R at 4.)

### 4.  261 East 78 Lofts LLC

Prior to December 2014, Miller was, through 261 Lofts Manager LLC ("261 Lofts

Manager"), a limited-liability company of which he was the sole owner, the 62.5-percent owner

of 261 East 78 Lofts LLC ("261 East"), a limited-liability company that owns real property at

261 East 78th Street in Manhattan (the "261 East Property"). (Id.; see also Pl. Suppl. Decl. (Dkt.

30-20) ¶¶ 23-24.)  The remaining 37.5 percent of 261 East was held by Lee Moncho, who is not

a party to this case. (R&R at 4.)  In December 2014, Miller sold Plaintiff a 30-percent ownership

interest in 261 East, held by 261 Lofts Manager, in exchange for $1 million. (Id.)  Moncho then

objected to the sale, which Moncho allegedly claimed required his consent. (Pl. Suppl. Decl. ¶

29.)  On September 30, 2015, as part of the agreement to settle Plaintiff's claims relating to the

HS45 bankruptcy proceeding (discussed above), Miller acknowledged his prior assignment to

Plaintiff of a 30-percent interest in 261 East, and Plaintiff granted him an option to repurchase

this interest for $1.3 million. (R&R at 4; Pl. Suppl. Decl. ¶¶ 30-31.)  On the same day, however,

Miller executed an escrow agreement providing that Miller's membership interests in 261 Lofts

Manager (and thus, in 261 East and the 261 East Property) would be delivered to Moncho unless,

by December 31, 2015, Miller fulfilled certain conditions, including rescinding the sale of the

30-percent membership interest in 261 East to Plaintiff. (R&R at 4-5; Pl. Suppl. Decl. ¶¶ 33-38.)

Because Miller never fulfilled those conditions, Moncho now claims to be the sole owner of 261

East pursuant to the escrow agreement. (Pl. Suppl. Decl. ¶¶ 38-40.)  Plaintiff claims that the

supposed delivery of Miller's ownership interests in 261 Lofts Manager to Moncho lacked consideration and is therefore void. (Id.)

## B. Procedural History

On October 19, 2016, Plaintiff filed suit in this court, seeking (among other things) damages for Defendants' alleged breach of various contracts, an injunction barring Defendants from transferring, modifying, or encumbering their assets, and enforcement of the judgment referenced above. (Compl. (Dkt. 1).) Plaintiff promptly moved for a temporary restraining order ("TRO") and preliminary injunction. (TRO Mot.; Pl. Mem.) The court issued the requested TRO and scheduled a hearing on the motion for preliminary injunction before the Magistrate Judge. (Order on TRO Mot. (Dkt. 7).) The parties agreed to keep the TRO in place pending the court's resolution of Plaintiff's motion for a preliminary injunction. (Sprei Mot. to Modify TRO (Dkt. 12); Miller Mot. to Modify TRO (Dkt. 13); Pl. Partial Opp'n to Mot. to Modify TRO (Dkt. 14).) On November 3, 2016, Defendants failed to appear at a hearing before the Magistrate Judge, who recommended that the court grant the motion as unopposed. (Nov. 3, 2016, Min. Entry (Dkt. 17).) Defendants objected to that recommendation, asking that the court extend their time to respond to the TRO and to schedule oral argument on the motion for preliminary injunction. (Defs. Nov. 6, 2016, Ltr. (Dkt. 23).) The parties then re-stipulated to keeping the TRO in place pending the court's resolution of the motion for a preliminary injunction. (Stip. Regarding TRO (Dkt. 24); Nov. 10, 2016, Order Regarding Stip.) That same day, this court referred Plaintiff's motion for a preliminary injunction[2] to the Magistrate Judge for a report and

---

[2] Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. (Pl. Mem. at 1.) They do not argue that because this is a diversity case, the availability of an injunction should be determined by state law, so the court need not consider this argument. See Grupo Mexicano, 527 U.S. at 318 n.3; Paradigm Biodevices, Inc. v. Centinel Spine, Inc., No. 11-CV-3489 (JMF), 2013 WL 1915330, at *2 n.1 (S.D.N.Y. May 9, 2013).

recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(1) of the Federal Rules of Civil Procedure. (Nov. 10, 2016, Order Referring Mot.)

On December 7, 2016, Defendants filed their opposition to the motion for preliminary injunction. (Defs. Opp'n to Mot. for Prelim. Inj. ("Defs. Opp'n") (Dkt. 26).) In that opposition, Defendants argued, among other things, that "[t]o the extent that Plaintiff seeks a preliminary injunction to secure a potential money judgment on his separate breach of contract causes of action, such request must be denied as improper pursuant to . . . [(Grupo Mexicano)]." (Id. at 12; see id. at 12-14.)

In response, Plaintiff filed an amended complaint, which added claims for fraudulent conveyance and equitable liens. (Am. Compl.) Plaintiff now asserts five fraudulent-conveyance claims under New York's Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. L. §§ 270-81 ("NYUFCA"). (Am. Compl. ¶¶ 108-138.) He contends that Defendants made four specific fraudulent conveyances: (1) the misappropriation of the $14 million down payment for the sale of the 45 John Property; (2) the misappropriation of the mortgage proceeds received by Sullivan 90; (3) the misappropriation of $374,968.47 from 97 Grand, see Order Directing Appointment of Trustee (Dkt. 104), In re 97 Grand Avenue LLC, No. 15-13367 (Bankr. S.D.N.Y. Jan. 10, 2017); and (4) the purported transfer of a 100-percent ownership interest in 261 East to Moncho after having sold a 30-percent stake in that entity to Plaintiff. (Am. Compl. ¶¶ 108-12.) Plaintiff alleges that these transfers were made with the actual intent to defraud creditors (id. ¶ 115); without fair consideration by entities that were insolvent or became insolvent as a result of the transfers (id. ¶¶ 120-21) or were undercapitalized at the time of the transfers (id. ¶ 131); and without fair consideration at a time when the entities making the transfer "intended and/or believed that he or it would incur debts beyond his or its ability to pay

as they mature" (id. ¶ 136). Plaintiff further alleges that all transfers after February 3, 2016, were made by Defendants after a judgment was docketed against them. (Id. ¶¶ 125-26.) With respect to each claim, Plaintiff seeks an award of money damages. (Am. Compl. ¶¶ 116-17, 122-23, 127-28, 132-33, 137-38.) Plaintiff also seeks attorneys' fees in connection with his first fraudulent-conveyance claim, as well as punitive damages for aiding and abetting a fraud, with respect to all claims. (Id. ¶¶ 117, 139-44.)

Plaintiff also asks the court to impose two equitable liens in connection with his investments in 97 Grand and 261 East. First, in connection with the ten-percent interest in 97 Grand allegedly pledged by Defendants as security for their $1 million acknowledged indebtedness relating to the Emmons Loan, Plaintiff seeks an equitable lien on Defendants' membership interests in 97 Grand and Sy Grand. (Id. ¶¶ 148-57.) Second, in connection with the $1 million he paid for an interest in 261 East, he seeks an equitable lien on Miller's membership interest in 261 Lofts Manager. (Id. ¶¶ 166-85.)

Along with his amended complaint, Plaintiff also filed a reply memorandum, which argued that the parties satisfied complete diversity of citizenship and that Grupo Mexicano did not preclude the court from entering a preliminary injunction in order to avoid the frustration of its final judgment and in light of his newly asserted equitable claims. (See generally Pl. Mem.) Defendants then filed a sur-reply letter, which argued that the Magistrate Judge should not consider, or should reject, these arguments. (Defs. Sur-Reply (Dkt. 43).)

On September 29, 2017, the Magistrate Judge entered the R&R. He rejected Defendants' arguments regarding Grupo Mexicano. The Magistrate Judge read Grupo Mexicano as "stand[ing] for the proposition that injunctive relief is not available to freeze a debtor's assets pending adjudication of an action solely at law." (R&R at 8 (quoting Ally Bank v. Reimer, No.

9

9-CV-2795 (ADS) (WDW), 2010 WL 446025, at *4 (E.D.N.Y. Jan. 29, 2010) (R. & R.)). Thus, "[a]lthough some of the pending claims seek relief in the form of money damages," Plaintiff had also alleged that money damages were inadequate and asserted inherently equitable claims for fraudulent conveyance and for imposition of equitable liens on Defendants' assets in 97 Grand and 261 Lofts Manager, rendering Grupo Mexicano's bar inapplicable. (R&R at 9.) The Magistrate Judge further found that Plaintiff had demonstrated irreparable harm, likelihood of success (with respect to his contract and equitable-lien claims) or serious questions going to the merits, along with a decidedly favorable balance of the equities (with respect to his fraudulent-conveyance claims) and recommended that the court grant the requested preliminary injunction.

Defendants timely objected. (Defs Obj.)

## II. STANDARD OF REVIEW

### A. Review of Magistrate Judge's R&R

When a party timely objects to a magistrate judge's R&R, the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); accord Fed. R. Civ. P. 72(b)(3). The court otherwise reviews the R&R for clear error. Fisher v. Forrest, — F. Supp. 3d —, 2018 WL 948758, at *5 (S.D.N.Y. 2018). "Where objections are merely perfunctory responses and not specific and clearly aimed at particular findings in the magistrate judge's proposal, clear error, and not de novo, review applies." Perez v. Lee, No. 14-CV-5763 (JPO), 2018 WL 740995, at *2 (S.D.N.Y. Feb. 7, 2018) (internal quotation marks, citations, and emphasis omitted).

### B. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." Winter v.

Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In the Second Circuit, a movant may obtain

a preliminary injunction by demonstrating the existence of "serious questions going to the merits

to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the

party requesting the preliminary relief" in lieu of likelihood of success on the merits. Citigroup

Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir.

2010).

## III.    DISCUSSION

Defendants raise five specific objections to the R&R. First, they argue that the

Magistrate Judge erred by even considering Plaintiff's argument that Grupo Mexicano does not

bar the court from issuing an asset-freezing preliminary injunction in this case because Plaintiff

asserts equitable claims and seeks a permanent injunction. (Reply in Supp. of Mot. for Prelim.

Inj. ("Pl. Reply") (Dkt. 30) at 6-13); Defs. Obj. at 1, 8-10.) Second, they contend that even if

this argument was properly raised, the court should reject it, because Grupo Mexicano bars asset-

freezing injunctions in cases presenting both legal and equitable claims where "the 'principal

objects' of the suit are money damages" or there is an insufficient "'nexus' between the

preliminary injunction requested and the ultimate equitable relief sought." (Defs. Obj. at 1-2, 10-

17.) Third, Defendants contend that Plaintiff cannot demonstrate "irreparable harm" warranting

issuance of an injunction, because "Grupo[ Mexicano] made clear that the 'dissipation or transfer

of assets in order to frustrate a judgment creditor' does not constitute irreparable harm." (Id. at

3, 18-19.) Fourth, they maintain that the Magistrate Judge erred in finding that Plaintiff had

shown serious questions going to the merits of his fraudulent-conveyance claims and that the

balance of hardships tipped in his favor." (Id. at 3, 19-20.) Finally, Defendants assert that the

R&R erred in finding that Plaintiff had demonstrated a likelihood of success on the merits of his equitable-lien claims. (Id. at 3, 21-22.) The court addresses each objection in turn.

### A. Authority to Issue Asset-Freezing Preliminary Injunction

#### 1. Consideration of Newly Raised Arguments

The Magistrate Judge did not err by considering Plaintiff's arguments for why Grupo Mexicano did not preclude the court from entering a preliminary injunction in this case. It is true that the court need not consider arguments raised for the first time in a reply brief. See, e.g., Williams v. Suffolk County, — F. Supp. 3d —, 2018 WL 878974, at *5 (E.D.N.Y. 2018) (citing, e.g., Keefe v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995)). The question of whether Grupo Mexicano barred this court from entering an asset-freezing preliminary injunction was not, however, first raised in Plaintiff's reply. In their opposition brief, Defendants first made the argument that Grupo Mexicano barred an asset-freezing preliminary injunction. (Defs. Opp'n at 12-14.) It was entirely appropriate for Plaintiff to attempt to rebut this argument in his reply brief.

To be fair, Plaintiff also raised new arguments in his reply brief about the scope of Grupo Mexicano. By filing an amended complaint after Defendants filed their opposition to his motion for a preliminary injunction, Plaintiff effectively shifted the legal ground under this case. (Pl. Reply at 4-13.) Even accepting that, by so doing, Plaintiff "newly raised" arguments about the scope of Grupo Mexicano, however, the Magistrate Judge was entitled to consider these arguments so long as Defendants thereby suffered no "unfair prejudice." T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A., No. 10-CV-2843 (JG), 2010 WL 3310262, at *4 (E.D.N.Y. Aug. 19, 2010); see also Booking v. Gen. Star Mgmt. Co., 254 F.3d 414, 418 (2d Cir. 2001). No unfair prejudice resulted from the Magistrate Judge's consideration of these arguments, because, after

Plaintiff filed his reply and amended complaint, Defendants filed a sur-reply brief, which the Magistrate Judge demonstrably considered. (R&R at 9-10.) While Defendants maintain that they lacked a full and fair opportunity to rebut Plaintiff's arguments because their sur-reply brief was submitted "with great urgency to ensure that the Court did not grant relief based on arguments that should not be considered" (Defs. Obj. at 9), the record demonstrates that Defendants submitted this sur-reply nearly a week after Plaintiff filed his amended complaint and reply and that they did not seek an extension of time within which to file a lengthier sur-reply brief. Indeed, Defendants subsequently asked the Magistrate Judge to expedite issuance of his R&R, without suggesting that they needed any further opportunity to address Plaintiff's Grupo Mexicano arguments. (Defs. July 5, 2017, Ltr. (Dkt. 43).)

Even if the Magistrate Judge's consideration of these arguments had unfairly prejudiced Defendants, any such prejudice would be cured by this court's de novo review of Defendants' Objections to the R&R. Defendants have argued at length before this court that Plaintiff's amendments to his complaint fail to salvage his motion for a preliminary injunction. (Defs. Obj. at 10-17.) They thus cannot be said to have lacked a full and fair opportunity before this court to rebut Plaintiff's newly raised arguments about the scope of Grupo Mexicano.

### 2.    Merits

The court therefore turns to the question of whether Grupo Mexicano bars the court from issuing a preliminary injunction freezing all of Defendants' assets. Plaintiff requests, and the Magistrate Judge recommended that the court issue, a preliminary injunction freezing "(i) [Defendants'] respective membership interests in any limited-liability company; (ii) all of their other ownership interests in any other entity; and (iii) any other real and personal property in which either has an interest." (Am. Compl. ¶ 75; R&R.) Defendants object on the grounds that,

notwithstanding the fact that Plaintiff has asserted equitable claims, "the 'principal objects' of [his] suit are money damages and/or the request for a preliminary injunction was made primarily to protect [Defendants'] assets in the event that [Plaintiff] obtains a money judgment," and thus Grupo Mexicano bars the court from entering the requested preliminary injunction. (Defs. Obj. at 10-11.) The court agrees that, to the extent Plaintiff seeks to freeze Defendants' assets to ensure that they will be available to satisfy a judgment in his favor, it may not issue such a preliminary injunction. The court may, however, issue a preliminary injunction to preserve the assets necessary to accord final relief with respect to Plaintiff's equitable claims.

<em>a)    Grupo Mexicano</em>

In Grupo Mexicano, the Court considered "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." 527 U.S. at 310. The petitioner, Grupo Mexicano de Desarrollo, S.A. ("GMD"), had issued, and its subsidiaries had guaranteed, notes that it soon had trouble repaying. Id. at 310-11. As part of an attempted debt restructuring, GMD announced that it would place certain of its assets in trust to pay its employees and, apparently, to pay back taxes. Id. at 311-12. The noteholders sued, seeking damages for breach of contract, as well as a preliminary injunction restraining GMD and its subsidiaries from transferring their assets. Id. at 312. The district court granted the preliminary injunction, and the U.S. Court of Appeals for the Second Circuit upheld the injunction. Id. at 312-13.

That, the Court held, was error: "[T]he District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." Id. at 333. The Court based its decision in

14

significant part on the premise that courts of equity historically did not permit unsecured creditors to freeze debtors' assets prior to judgment to facilitate collection of a legal debt. See id. at 318-24. While "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," a party could not obtain an asset-freezing preliminary injunction simply to preserve "so much of [the defendant's] funds or property as the court deems necessary for security or compliance with its possible decree." Grupo Mexicano, 527 U.S. at 326-27 (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 220, 222 (1945)). In reaching this conclusion, the Court carefully distinguished its prior decision in Deckert v. Independence Shares Corp., 311 U.S. 282 (1940), in which it had upheld a preliminary injunction to preserve the status quo in a suit seeking restitution of ill-gotten gains and rescission of contracts that allegedly violated the Securities Act of 1933, on the grounds that "[t]he preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." Grupo Mexicano, 527 U.S. at 324-25 (discussing Deckert, 311 U.S. at 285-88). Grupo Mexicano thus makes clear that courts may not enter preliminary injunctions solely to preserve assets to satisfy a party's essentially legal claims for money damages.

Grupo Mexicano does not, however, preclude courts from entering asset-freezing preliminary injunctions in cases in which the movant seeks equitable relief. As the Second Circuit held in Gucci America, Inc. v. Weixing Li, 768 F.3d 122 (2d Cir. 2014), "[t]he Court's holding [in Grupo Mexicano] was limited to actions for money damages in which plaintiffs seek a preliminary injunction to prevent the defendant 'from transferring assets in which no lien or equitable interest is claimed.'" Id. at 130 (quoting Grupo Mexicano, 527 U.S. at 310). A court retains the authority to issue a prejudgment asset freeze where such authority is specifically

authorized by statute, id. at 131 n.11, or "where such relief was traditionally available: where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief," id. at 131 (citations omitted). Thus, in Gucci America, an asset-freezing preliminary injunction was available because the plaintiffs had sought an accounting, a remedy traditionally understood as equitable. See id. at 130-33; see also SEC v. Miller, 808 F.3d 623, 633 (2d Cir. 2015) (citing Gucci America for the proposition that "district courts have equitable power to issue a pre-judgment asset freeze where such relief was traditionally available"). To ascertain whether a plaintiff seeks "equitable" relief, the court considers both whether the claim is one that would have been heard in equity prior to the merger of law and equity, and whether the plaintiff seeks relief traditionally understood as equitable. See Shamrock Power Sales, LLC v. Scherer, No. 12-CV-8959, 2016 WL 6102370, at *4-5 (S.D.N.Y. Oct. 18, 2016) ("Shamrock") (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)).

Nor does Grupo Mexicano prevent a court from entering an asset-freezing preliminary injunction in a "mixed case" in which a plaintiff seeks both legal and equitable relief. See Gucci Am., 768 F.3d at 131. "[A]s many courts have held, 'where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.'" Paradigm BioDevices, Inc. v. Centinel Spine, Inc., No. 11-CV-3489 (JMF), 2013 WL 1915330, at *2 (S.D.N.Y. May 9, 2013) (quoting Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. Of Va., L.L.C., 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001)). In such a case, however, most courts require the movant to demonstrate "a 'nexus' between the injunctive relief requested and the equitable relief ultimately sought." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565 (PKC), 2016 WL 7217641, at *2 (E.D.N.Y. Dec. 13, 2016) (citing, e.g., Shamrock, 2016 WL 6102370, at *6). To establish that such a "nexus" exists,

the party seeking an injunction must show that the "injunction acts 'in aid of the recovery' sought in equity," id. (quoting Shamrock, 2016 WL 6102370, at *5-6)—in other words, that the preliminary injunction is reasonably necessary to preserve the status quo with respect to particular assets so that the court can grant the movant ultimate relief, see Deckert, 311 U.S. at 290. As the Fourth Circuit has held:

> [W]hen the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. The nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.

United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 489, 496-97 (4th Cir. 1999).

Plaintiff argues, and the Magistrate Judge appears to have concluded, that Grupo Mexicano does not apply to "actions involving mixed legal and equitable claims." (Pl. Opp'n at 3-4; R&R at 9.) That conclusion is overbroad. As discussed above, the weight of authority in this circuit supports the view that Grupo Mexicano does not necessarily bar asset-freezing preliminary injunctions in mixed cases. In such a case, however, the injunction must be ancillary to the plaintiff's claims for equitable relief. See Gucci Am., 768 F.3d at 131. It is thus not true that the Grupo Mexicano rule falls away once a plaintiff asserts any claim for equitable relief.[3]

For their part, Defendants argue that, even when the party seeking an injunction asserts equitable claims and there is a nexus between the injunction and the equitable relief ultimately

---

[3] The Ninth Circuit has "held that the Grupo Mexicano rule applies only in cases seeking exclusively legal damages." Takiguchi v. MRI Int'l, Inc., 611 F. App'x 919, 921 (9th Cir. 2015) (memorandum disposition); see also Johnson v. Couturier, 572 F.3d 1067, 1083-84 (9th Cir. 2009); Rubin v. Pringle (In re Focus Media, Inc.), 387 F.3d 1077, 1084-85 (9th Cir. 2004). This statement could be read either broadly, for the proposition that Grupo Mexicano is inapplicable to "mixed" cases, or narrowly, for the proposition that Grupo Mexicano does not necessarily bar the issuance of asset-freezing preliminary injunctions in such cases.

sought, the court lacks authority to issue an asset-freezing preliminary injunction "where the 'principal objects of the plaintiff's suit are money damages and/or the request for a preliminary injunction was made primarily to protect the defendant's assets in the event that the plaintiff obtains a money judgment." (Defs. Obj. at 10-11 (citing Corp. Comm'n of the Mille Lacs Band of Ojibwe Indians v. Money Ctrs. of Am., Inc., 915 F. Supp. 2d 1059, 1062-64 (D. Minn. 2013) ("Money Ctrs.")).) The court declines Defendants' invitation to read Grupo Mexicano so broadly. For one thing, it is not clear that this rule is consistent with Gucci America, which rejected an argument that the plaintiffs' equitable claims under the Lanham Act were "illusory" because the plaintiffs could have elected to pursue statutory damages rather than an accounting. 768 F.3d at 133. For another, the court is not persuaded that there are workable standards by which it can assess the "essence of the action and the strength of the alleged equitable interest" in, or the "principal objects" of, a case, to determine if the case sounds more in law or equity. Cf. Money Ctrs., 915 F. Supp. 2d at 1063. Rather than attempting to determine whether this case, taken as a whole, appears to be more of a breach-of-contract suit clothed in other garb or an inherently equitable action, the court will follow what appears to be the prevailing approach in this circuit, parsing the amended complaint claim-by-claim to determine whether the Plaintiff asserts any truly equitable claims that might support the issuance of a preliminary injunction. See Shamrock, 2016 WL 6102370, at *4-5.

b) _Application_

Plaintiff seeks an asset freeze in order to prevent Defendants from dissipating their assets, in light of their "extensive history of documented fraudulent conduct, which Defendants have not disputed in this action." (Pl. Opp'n at 4; see also Am. Compl. ¶¶ 69-75.) The only question is

whether this requested asset freeze is ancillary to Plaintiff's equitable claims or intended to safeguard assets in satisfaction of a potential judgment on Plaintiff's legal claims.

### (1) Contract Claims

In his amended complaint, Plaintiff asserts claims (1) to enforce the indemnification agreement executed by Defendants in connection with their settlement of the John Lofts dispute (Am. Compl. ¶¶ 76-80); (2) for Defendants' alleged breach of their guaranty of a $5.4 million promissory note executed by 3112 Emmons Lofts LLC (the "Emmons Note") (id. ¶¶ 81-90); (3) to recover the expenses of collecting on that guaranty (id. ¶¶ 91-94); (4) for Defendants' breach of a $1.3 million promissory note allegedly executed by Defendants on January 1, 2016 (id. ¶¶ 95-102); (5) to recover the expenses of collecting on that note (id. ¶¶ 103-107); and (6) for 3112 Emmons Lofts LLC's breach of contract with respect to the Emmons Note (id. ¶¶ 158-65). These are clearly legal, not equitable, claims. See Great-West, 534 U.S. at 210 ("[M]oney damages are, of course, the classic form of legal relief." (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993))); see also Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells, 213 F.3d 398, 401 (7th Cir. 2000) ("A claim for money due and owing under a contract is quintessentially an action at law." (internal quotation marks and citation omitted)). Under Grupo Mexicano, the court may not enter a preliminary injunction simply to safeguard Defendants' assets in the event that Defendants are ultimately held liable on these claims.

### (2) NYUFCA Claims

The court turns, therefore, to Plaintiff's newly added claims, beginning with Plaintiff's newly asserted New York-law fraudulent-conveyance claims.

Grupo Mexicano does not necessarily bar the court from entering a preliminary injunction freezing Defendants' assets that are the subject of Plaintiff's fraudulent-conveyance

claims. Grupo Mexicano specifically reserved the question of whether, in a state-law fraudulent conveyance or fraudulent transfer action, a court could issue an asset-freezing preliminary injunction. 527 U.S. at 324 n.7. The Court observed that "[s]everal States have adopted the Uniform Fraudulent Conveyance Act (or its successor the Uniform Fraudulent Transfers Act), which has been interpreted as conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim," and noted that such state laws, by "eliminating the need for a judgment may have altered the common-law rule that a general contract creditor has no interest in his debtor's property." Id. Following Grupo Mexicano, a number of courts of have recognized that the Grupo Mexicano rule "exempts from its proscription against preliminary injunctions freezing assets in cases involving . . . fraudulent conveyances." Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 33 (1st Cir. 2010) (quoting Rubin v. Pringle (In re Focus Media, Inc.), 387 F.3d 1077, 1085 (9th Cir. 2004)); see also Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 628 (6th Cir. 2013); Wimbledon Fund, SPC Class TT v. Graybox, LLC, 648 F. App'x 701, 702 (9th Cir. 2016) (memorandum disposition).

Plaintiff asserts his fraudulent-conveyance claims under the NYUFCA, which plainly authorizes equitable remedies. See Paradigm Biodevices, 2018 WL 1915330, at *3; see generally Essenkay Corp. v. Mangel Stores Corp., 10 F. Supp. 50, 51 (S.D.N.Y. 1935) (noting that New York had changed the traditional rule that a court of equity would not award pre-judgment relief against a fraudulent conveyance). The NYUFCA empowers creditors with matured or unmatured claims to seek to have the fraudulent conveyance annulled or set aside. N.Y. Debt. & Cred. L. §§ 278-79. The setting-aside of a fraudulent conveyance is a form of equitable relief. See, e.g., Trafalgar Power, Inc. v. Aetna Life Ins. Co., 131 F. Supp. 2d 341, 349-50 (N.D.N.Y. 2001); Paradigm BioDevices, 2013 WL 1915330, at *3. If Plaintiff could

obtain <u>final</u> equitable relief with respect to these claims, then he could also obtain <u>preliminary</u> injunctive relief, as well. "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." <u>De Beers</u>, 325 U.S. at 220; <u>see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.</u>, 295 F. Supp. 2d 366, 388 (S.D.N.Y. 2003).

Plaintiff has not, however, requested equitable relief with respect to his fraudulent-conveyance claims. With respect to each claim, Plaintiff requests money damages. (Am. Compl. ¶¶ 116-17, 122-23, 127-28, 132-33, 137-38.) He also requests attorneys' fees with respect to his first fraudulent-conveyance claim. (<u>Id.</u> ¶ 117.) He does not, however, seek to have any of the alleged fraudulent conveyances invalidated or set aside. Although he seeks an asset-freezing preliminary injunction, he does so with respect to <u>all</u> Defendants' assets, not those specific assets that he alleges were fraudulently transferred, and, critically, does so for the express purpose of preventing Defendants from "frustrat[ing] enforcement of [his] Judgment against them." (<u>Id.</u> ¶ 71.) These fraudulent-conveyance claims therefore sound in law, not equity. <u>See Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 49 (1989). Accordingly, the court cannot issue a preliminary injunction for the purpose of preserving those assets to satisfy any judgment with respect to these claims. <u>See, e.g., Coley</u>, 2016 WL 7217641, at *4-5; <u>Shamrock</u>, 2016 WL 6102370, at *5-6; <u>cf. Trafalgar Power</u>, 131 F. Supp. 2d at 350 (holding that <u>Grupo Mexicano</u> did not bar issuance of preliminary injunction freezing assets with respect to fraudulent-conveyance claims seeking equitable relief); <u>Paradigm BioDevices</u>, 2013 WL 1915330, at *3 (same); <u>Ally Bank</u>, 2010 WL 446025, at *4 (same); <u>Cont'l Cas. Co. v. HealthPrime, Inc.</u>, No. 07-CV-2512 (BBM), 2009 WL 10665757 (N.D. Ga. Sept. 21, 2009) (same).

### (3) Equitable-Lien Claims

The court may, however, issue a preliminary injunction freezing Defendants' assets that are the subject of Plaintiff's equitable-lien claims. Grupo Mexicano noted that the Court had upheld an asset-freezing injunction in a prior case in which "the creditor . . . asserted an equitable lien on the property." 527 U.S. at 326 (distinguishing United States v. First National City Bank, 379 U.S. 378 (1965)). It thus did not disturb the well-established rule that "where the plaintiff can demonstrate an equitable interest in particular property, the court may in certain circumstances enter an injunction freezing those assets for the pendency of the litigation." R.B. Dev., Co. v. Tutis Capital LLC, No. 12-CV-1460 (CBA), 2012 WL 2357318, at *3 (E.D.N.Y. June 20, 2012); see Republic of Philippines v. Marcos, 806 F.2d 344, 355 (2d Cir. 1986). Whereas Plaintiff sought essentially legal relief for fraudulent-conveyance claims, he seeks equitable relief for his equitable-lien claims, in the form of liens on specific assets that are currently in Defendants' possession but, according to Plaintiff, "belonging in good conscience to [him]." See Great-West, 534 U.S. at 213 ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). Because these claims sound in equity, not law, Grupo Mexico does not bar the court from issuing a preliminary injunction freezing Defendants' assets with a sufficient nexus to these claims.

\* \* \*

Defendants' second objection is thus partly correct. Under Grupo Mexicano, the court may not issue an asset-freezing preliminary injunction to preserve funds necessary to satisfy a potential legal judgment. Instead, the court's authority is limited to freezing Defendants' assets

to the extent reasonably necessary "to preserve the status quo in aid of the ultimate equitable relief" claimed by Plaintiff. Rahman, 198 F.3d at 497 (emphasis omitted). Plaintiff's contract and fraudulent-conveyance claims, which seek only legal, not equitable, remedies, do not support the issuance of an asset-freezing preliminary injunction. Grupo Mexicano does not, however, prohibit the court from issuing a preliminary injunction freezing those assets that are the subject of Plaintiff's equitable-lien claims.

## B.     Irreparable Harm

Plaintiff alleges that Defendants have engaged in a long-running game of real-estate three-card monte, shuffling around their interests in properties and single-purpose business entities to defraud investors and evade creditors. The R&R noted that Miller has refused to comply with subpoenas, resulting in a contempt order against him; that Defendants used the proceeds of the "unauthorized sale of the John Lofts Property to satisfy a separate financial obligation and then falsif[ied] title documents to conceal the unlawful transaction"; and that Defendants have previously violated a TRO and been held liable for fraudulent conveyance to avoid paying a judgment in excess of $1.5 million. (R&R at 10.) The Magistrate Judge also noted that Defendants had not attempted to rebut any of these allegations. (Id.) Accordingly, the Magistrate Judge concluded that Plaintiff had demonstrated that it was likely that, absent a preliminary injunction, Defendants would attempt to dissipate or transfer assets to frustrate Plaintiff's attempts to collect what he is owed. (Id. at 10-11.)

Defendants contend that this conclusion was clearly erroneous because, after Grupo Mexico, the transfer or dissipation of assets to frustrate a judgment creditor cannot constitute irreparable harm. (Defs. Obj. at 18-19.) The court disagrees. "It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-

23

movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is proper." Firemen's Ins. Co. of Newark, New Jersey v. Keating, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990); see also, e.g., Green v. Drexler (In re Feit & Drexler, Inc.), 760 F.2d 406, 416 (2d Cir. 1985); Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc., 440 F. Supp. 2d 195, 210-11 (E.D.N.Y. 2006). Grupo Mexicano did not disturb this longstanding rule. In that case, the Court considered whether Rule 65 of the Federal Rules of Civil Procedure empowers district courts to issue asset-freezing preliminary injunctions in suits solely for money damages. 527 U.S. at 310, 318. The Court did not address whether the dissipation or transfer of assets may constitute irreparable injury, nor does this court identify anything in that case that sub silentio overruled the extensive body of precedent holding that it does. Defendants conflate the question of whether a court has authority to issue an asset-freezing preliminary injunction with the separate question of whether, assuming the court has authority to issue such an injunction, the movant has demonstrated irreparable harm warranting preliminary relief.

In light of the extensive and uncontested allegations of Defendants' attempts to misappropriate investor assets and evade creditors, the court has no difficulty concluding that, if no preliminary injunction were to issue, Defendants would likely attempt to transfer or dissipate the properties that are the subjects of the equitable-lien claims discussed above. Plaintiff has therefore demonstrated irreparable harm warranting issuance of a preliminary injunction. See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 881 (9th Cir. 2003); Gelfand v. Stone, 727 F. Supp. 98, 100-01 (S.D.N.Y. 1989).

## C.    Likelihood of Success on the Merits

Defendants next challenge whether Plaintiff has demonstrated that he is likely to prevail

on the merits of his claims, or whether he has demonstrated a serious question going to the merits

of those claims along with a balance of hardships tipping decidedly in his favor. See, e.g., N.

Am. Soccer League, LLC v. U.S. Soccer Federation, Inc., — F.3d —, 2018 WL 1021223, at *2

(2d Cir. 2018). (Defs. Obj. at 19-22.)  Because the court has authority to issue a preliminary

injunction only with respect to Plaintiff's equitable-lien claims, it will only discuss whether

Plaintiff has established a likelihood of success on the merits of these claims.

In the R&R, the Magistrate Judge found that Plaintiff was likely to prevail on the merits

of his equitable-lien claims. (R&R at 11-12.)  In particular, the Magistrate Judge noted that

Plaintiff's asserted equitable liens both arose under specifically identified contracts, namely the

pledge of membership interests in 97 Grand as security for the $1 million acknowledged

indebtedness and the amendment to the 261 East operating agreement. (Id. at 11.)  The

Magistrate Judge also observed that Defendants had not presented any evidence to the contrary.

(Id. at 12.)  Defendants object, contending that the court should reject Plaintiff's equitable-lien

claims because these claims are "based on monies allegedly due and owing," and because

Plaintiff can seek legal relief with respect to these claims. (Defs. Obj. at 21-22.)

"An equitable lien is a right to charge specific property or its proceeds with the payment

of a particular debt . . . ." Musso v. Tesmetges (In re Tesmetges), 47 B.R. 385, 389 (E.D.N.Y.

1984).  Under New York law, the court may impose "an equitable lien on property if there is an

express or implied contract, meeting certain requirements, concerning the property. Sec. Pac.

Mortg. & Real Estate Servs., Inc. v. Republic of Philippines, 962 F.2d 204, 208 (2d Cir. 1992)

("Sec. Pac.").

The contract must identify the property directly, or describe the property in such a way as to make identification possible, and must clearly state the parties' intention that the identified property be held, given or transferred as security for an obligation. An equitable lien may be imposed on . . . a certain fund, but a mere promise . . . to satisfy a debt from a designated fund does not support creation of an equitable lien on that fund.

Thus, in establishing an equitable lien, plaintiff must show a particular agreement by defendant to confer a security interest in the property at issue. Plaintiff's mere expectation of payment, however sincere, is insufficient to establish an equitable lien. Without this type of specific contract creating a confidential relationship, the parties have merely contracted at arms length, and the plaintiff has no claim to an interest in specific property. A plaintiff without the promise of an interest in particular property must enforce his rights under the contract and cannot rely on an equitable lien.

Id. at 208-09 (internal quotation marks and citation omitted, alteration adopted, and emphasis added); see also James v. Alderton Dock Yards, Ltd., 176 N.E. 401, 403 (N.Y. 1931).

Applying these principles, the court turns to Plaintiff's two claims for equitable liens. Plaintiff is likely to succeed on the merits of the first claim, but not the second.

With respect to his first equitable-lien claim, Plaintiff has produced evidence that Defendants pledged a ten-percent interest in 97 Grand to him as security for their acknowledged indebtedness in connection with the Emmons Loan. (Pl. Suppl. Decl. ¶ 17.) Plaintiff's first equitable-lien claim thus arose from a "particular agreement by [D]efendant[s] to confer a security interest in the property at issue," Sec. Pac., 962 F.2d at 209, and does not merely "assert a failure to repay" the Emmons Loan, Liselli v. Liselli, 693 N.Y.S.2d 195, 196 (App. Div. 1999). Because Plaintiff makes no such showing with respect to Defendants' membership interests in Sy Grand, however, these interests cannot, at this time, be subject to an equitable lien.

While Defendants argue that Plaintiff cannot assert a claim for an equitable lien on their interest in 97 Grand because he can always sue to enforce the Emmons Loan (Defs. Obj. at 21-22), this argument ignores the uncontested allegation that Defendants pledged an interest in 97

Grand as security for that loan. To the extent Defendants suggest that courts cannot impose equitable liens in actions to recover "monies allegedly due and owing," this suggestion is at odds with the Second Circuit's recognition that, under New York law, a court may impose an equitable lien on a specific fund. Sec. Pac., 962 F.2d at 208.

Defendants are correct, however, that Plaintiff has not demonstrated a likelihood of success on the merits of his second equitable-lien claim. Plaintiff alleges that he paid Miller (via 261 Lofts Manager) $1 million for a 30-percent membership interest in 261 East, but that Miller nevertheless conveyed the entirety of his interest in 261 East to Moncho. (Am. Compl. ¶¶ 170-84.) Plaintiff seeks an equitable lien on the funds he paid to Miller (again, via 261 Lofts Manager) and on Miller's membership interest in Lofts Manager. (Id. ¶ 185.) Plaintiff does not point to any express or implied contract by which Defendants conferred to him a security interest in these properties or otherwise indicated that they intended those properties to be used to satisfy any debt they owed him. He therefore has not established that he is likely entitled to an equitable lien against these properties or that this claim presents a serious question going to the merits so as to warrant preliminary relief. See Capital Distrib. Servs., 440 F. Supp. 2d at 209-10.

### D. Balance of Hardships

Finally, Defendants object to the Magistrate Judge's determination that the balance of hardships tipped decidedly in Plaintiff's favor. (R&R at 13-14; Defs. Obj. at 20.) The Magistrate Judge noted that Defendants had "neither seriously challenged [Plaintiff] on the merits nor identified any cognizable prejudice that an injunction will cause them to suffer." (R&R at 14.) In particular, Defendants had offered no argument on this point in their opposition or sur-reply, but only asserted in a subsequent letter to the court that the TRO has "prevented [them] from transacting business in the ordinary course and earning a livelihood" and "hampered

27

their ability to settle unrelated matters involving other alleged creditors." (Defs. July 5, 2017, Ltr. at 2; accord Defs. July 7, 2017, Ltr. (Dkt. 45) at 1; Defs. Aug. 22, 2017, Ltr. (Dkt. 46).) Even accepting that these "vague allegations of harm" were cognizable, the Magistrate Judge concluded that they were outweighed by the harms to Plaintiff if a preliminary injunction did not issue. (R&R at 14.)

Without elaboration or further support, Defendants now reprise their arguments that Plaintiff will suffer no cognizable harm if an injunction does not issue, while they will be harmed by the continued freeze of their assets. (Defs. Obj. at 20.) This objection is conclusory and "simply reiterate[s] previous arguments" made to the magistrate judge, so the court reviews the R&R only for clear error on this point, Fischer, 2018 WL 948758, at *5, and finds none. The court has already-rejected Defendants' arguments for why Plaintiff would not suffer cognizable harm if they are allowed to continue moving assets beyond his reach. Defendants fail to offer even the most cursory explanation of how an injunction preventing them from disposing of one of their many assets would harm their business or livelihoods. The court therefore accepts the Magistrate Judge's conclusion that the balance of hardships tips in Plaintiff's favor.

### E.    Public Interest

The R&R did not discuss whether a preliminary injunction would be in the public interest. See Winter, 555 U.S. at 20. Defendants do not object to the R&R in this respect. Even assuming arguendo that the Magistrate Judge clearly erred by failing consider whether an injunction was in the public interest, this does not alter the outcome. This case is a dispute among private parties and does not meaningfully implicate the public interest. See Greendige v. Allstate Ins. Co., No 02-CV-9796 (JCF), 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003). If anything, the preliminary injunction would aid the public interest. There is hardly a conceivable

public interest in enabling Defendants to evade their creditors. To the extent a preliminary injunction could interfere with the operations of 97 Grand, and thus with the interests of parties not before the court, the court finds that any risk of such interference is amply outweighed by the factors discussed above.

## IV.     CONCLUSION

Plaintiff's motion for a preliminary injunction (Dkt. 5) is GRANTED IN PART. Defendants are enjoined from selling, pledging as security, or otherwise transferring or encumbering the ten-percent interest in 97 Grand that is the subject of Plaintiff's first equitable-lien claim. Defendants are further enjoined from taking any action to reduce the value of this interest, such as altering the 97 Grand operating agreement or transferring or encumbering any of 97 Grand's assets outside the ordinary course of business. Plaintiff's motion for a preliminary injunction is otherwise DENIED. The TRO previously entered in this case is hereby dissolved.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      March 23, 2018

NICHOLAS G. GARAUFIS
United States District Judge